UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re Anthony G. Miceli, | ) | Bankruptcy No. 17-82877 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

Associated Bank, N.A., a secured creditor, objects to confirmation of the amended Chapter 13 Plan proposed by Anthony Miceli. (ECF No. 30.) Associated Bank objects to the Debtor's proposal to distribute smaller monthly payments to the secured creditor for its mortgage arrearage claim until the allowed claim of the Debtor's attorneys is paid in full, after which the payments to the creditor will increase. The creditor contends that this arrangement violates the requirement for confirmation that periodic payments under section 1325(a)(5)(B)(iii)(I) be "in equal monthly amounts." The Debtor argues in response that subsection (B)(iii)(I) does not prohibit a pro rata distribution to certain creditors and, in any case, the requirement does not apply to mortgage arrearage claim at issue here. For the reasons discussed below, this Court concludes that the plan provides for periodic, pro rata payments on secured claims that do not satisfy the equal monthly amount requirement. Because this arrangement is not accepted by the affected creditor the plan as proposed cannot be confirmed and the objection will be sustained.

Page 1 of 20

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter involves confirmation of a bankruptcy plan and, therefore, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## BACKGROUND

The facts are largely undisputed. The Debtor filed his Chapter 13 Petition on December 7, 2017. Two proofs of claim were timely filed and both claimants assert their claims to be fully secured. Of particular interest is the claim of Associated Bank for $72,202.62 secured by a mortgage in the Debtor's principal residence. In it the bank alleges that $23,943.42 of its claim is the "[a]mount necessary to cure any default as of the date of the petition."[1] (Claim No. 2-1.)

The Debtor prepared his plan on Official Form 113, the new national model plan implemented in December 2017. The plan treats Associated Bank's arrearage claim as secured in Part 3.1, captioned "Maintenance of payments and cure of default, if any." Under the plan the Debtor will continue to pay his monthly contractual installments, currently $477.83, directly to Associated Bank.[2] It provides that the existing arrearage will be paid in full through disbursements by the trustee, and lists

---

[1] Claim 2-1 alleges that the annual interest rate for the claim as of the date of the petition consists of both a "fixed" rate of 6.69% and a "variable" rate of 5.00% and attaches a copy of a purported mortgage and equity loan plan account agreement. According to the agreement, the loan is a revolving line of credit with no fixed term that, instead, requires monthly minimum payments of the "accrued interest for the statement" or 1.5% or $50 depending on the nature and amount of the balance.

[2] Associated Bank does not seem to dispute the amount of the current installment payment, having stated it to be "currently in the amount of $477.83" in its original objection filed February 2, 2018. (Objection to Confirmation of Plan, ECF No. 20, ¶ 8.)

Page **2** of **20**

the arrearage to be $23,943.42, for which it provides an interest rate of "0.00%". It bears noting while the plan indicates "$0.00" to be the monthly payment on the arrearage, it estimates that the total payments on the arrearage will be $23,943.42. The plan states that "[u]nless otherwise ordered by the court, the amounts listed on a proof of claim filed before the filing deadline under Bankruptcy Rule 3002(c) control over any contrary amounts listed below as to the current installment payment and arrearage." (Amended Plan, Part 3.1.)

General Order No. 17-02 of this Court took effect on December 1, 2017. It provides that:

> Unless otherwise provided in a chapter 13 plan, claims of creditors will be paid pro rata in the following order: (1) current mortgage payments under 1322(b)(5); (2) monthly payments on non-mortgage secured claims; (3) costs of administration; (4) mortgage arrears under 1322(b)(5); (5) priority unsecured claims other than costs of administration; and (6) other unsecured claims.

Mr. Miceli's plan provides for sixty monthly payments of $500 to be paid to the trustee, totaling $30,000. From this amount, the Debtor estimates that the trustee will distribute $5,743.00 on administrative expenses and priority claims over the term of the plan, including an estimated $1,800 in trustee's fees and $3,600 attorney's fees.[3] While the plan states that it anticipates paying 100% of allowed unsecured claims, it estimates them to be "$0".

In an apparent attempt to square the plan's $0.00 proposed monthly payment

---

[3]$1,800 plus $3,600 is only $5,400. The plan is unclear who will receive the additional $343 in payments or why, though the Debtor's attorney's fee application filed in the case seeks reimbursement of expenses of $310 for the filing fee and $33 in "other expenses" for which only $10 for a credit counseling course is explained.

Page **3** of **20**

with the anticipated total arrearage distribution of $23,943.42, the Debtor states in his response to the objection that his plan intends to pay the Associated Bank arrearage from the Debtor's $500 monthly installments. He explains that the trustee will distribute the funds according to the "waterfall" distribution arrangement provided in General Order No. 17-02. The plan proposes to treat the first 6% of each of the trustee's $500 monthly distribution as a cost of administration. The remainder of the trustee's monthly distribution will be paid first to the Debtor's attorney for his fees "estimated to total $1,800" until the attorney's claim is paid in full. After that, the remainder will be distributed to Associated Bank to pay in full its mortgage arrearage claim.

The parties stand on their briefs and oral argument. The Chapter 13 trustee takes no position on the objection. This determination is based upon these submissions, and takes judicial notice where appropriate of the court's docket of the case and the filings therein and with consideration of the argument of counsel. *See, e.g., Lulay Law Offices v. Rafter*, 2017 WL 4340089 n.1 (N.D. Ill. Sept. 29, 2017) (taking "judicial notice of matters of public record, such as filings in the bankruptcy court, even where not specifically referenced by the parties") (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)).

## DISCUSSION

A.   <u>Equal Monthly Payment Required by Section 1325(a)(5)</u>.

The court must confirm a Chapter 13 Plan that satisfies the criteria of 11 U.S.C. §1325(a). Under section 1325(a)(5):

>   (i) the plan [must] provide[] that--
>       (I) the holder of such claim retains the lien securing such claim until the earlier of--
>           (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>           (bb) discharge under section 1328; and
>       (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>   (iii) if--
>       (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>       (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan.

11 U.S.C § 1325(a)(5)(B).

With respect to the allowed secured claim of Associated Bank, the Debtor proposes to keep its real property collateral without the creditor's consent. The plan proposes to pay Associated Bank only its current monthly contractual payment, now estimated to be $477.83, for the first 8 or 9 months, after which the monthly distribution will bump up $470 to $947.83 for the remainder of the plan (with a slightly lower payment in the month the attorney's fees are paid off). Thus, the principal issue for confirmation is whether the plan provisions for the Associated Bank secured claim complies with the in equal payment provisions of section 1325(a)(5)(B)(iii)(I) of the Bankruptcy Code where it provides for the trustee to distribute to the creditor lesser monthly payments until the attorney's fees are paid

off.

Courts are divided whether a Chapter 13 plan can provide for such a two-step repayment arrangement for paying off attorneys' fees without the secured creditor's consent.[4] As discussed below, two lines of cases - the "*DeSardi* approach" and the "*Erwin* approach" - reach the conclusion that it is permissible to do so. A third line of decisions[5] holds that it is not. After close consideration of this authority and the statutory language, this court concludes that section 1325(a) does authorize confirmation of a plan that requires a secured creditor to accept smaller payments with larger payments to be made only later in the term of the plan.

The *DeSardi* line of cases reason that the equal monthly payment provision of section 1325(a)(5)(B)(iii)(I) only requires that the payments to the creditor be equal once they begin and must continue to be equal until they cease. *In re DeSardi*, 340 B.R. 790, 806 (Bankr. S.D. Tex. 2006). *See also In re White*, 564 B.R. 883 (Bankr. W.D. La. 2017); *In re Butler*, 403 B.R. 5 (Bankr. W.D. Ark. 2009); *In re Chavez*, 2008 WL 624566 (Bankr. S.D. Tex. Mar. 5, 2008); *In re Hill*, 397 B.R. 259 (Bankr. M.D. N. Car. 2007). These cases emphasize that subsection (5)(B)(iii)(I) does not expressly state when the equal payment requirement applies in contrast to other provisions of

---

[4] Virtually all of these cases involve allowed claims secured by personal, as opposed to real, property. The cases considered proposals for "adequate protection" payments to lenders while paying attorneys' fees, followed by larger payments after the fees are paid in full. Neither party here contends that the collateral at issue here, real estate, is depreciating in value or that Associated Bank is not adequately protected by the retention of its lien or that subsection (B)(iii)(II) somehow applies.

[5] *See In re Williams*, 583 B.R. 453 (Bankr. N.D. Ill. Apr. 10, 2018); *In re Romero*, 539 B.R. 557, 560 (Bankr. E.D. Wis. 2015); *In re Kirk*, 465 B.R. 300 (Bankr. N.D. Ala. 2012); *In re Willis*, 460 B.R. 784 (Bankr. D. Kan. 2011); *In re Espinosa*, 2008 WL 2954282, (Bankr. D. Utah Aug. 1, 2008); *In re Williams*, 385 B.R. 468 (Bankr. S.D. Ga. 2008); *In re Sanchez*, 384 B.R. 574 (Bankr. D. Ore. 2008); In re Denton, 370 B.R. 441 (Bankr. S.D. Ga. 2007).

the subsection such as section 1325(a)(5)(B)(iii)(II)'s requirement that adequate protection payments on personal property collateral be made "during the period of the plan" and section 1325(a)(5)(B)(ii)'s reference to value "as of the effective date of the plan" to conclude that the lack of such a provision in subsection (5)(B)(iii)(I) was intended. *See, e.g., In re DeSardi*, 340 B.R. at 805-06. On that limited point this court does not disagree with *DeSardi* and we do not suggest that section 1325(a)(5)(B)(iii)(I) requires monthly payments to be made throughout the full term of the plan.

But neither the plan proposed in this case nor the plans considered in the *DeSardi* line of cases propose to pay the secured creditor equal periodic payments over a single period. In *DeSardi*, the debtors proposed to pay the secured creditor a minimal amount as required to provide adequate protection by section 1325(a)(5)(B)(iii)(II) from the inception of the plan for several months followed by larger payments over the remainder of the plant's term sufficient to amortize and pay off the claim. The plan in this case proposes distributing only the current mortgage payments on the mortgage for the initial several months only after which it will include the arrearage payments.

The court in *DeSardi* concluded that "adequate protection payments are not meant to be considered when fulfilling the requirements of the equal payment provision." *In re DeSardi*, 340 B.R. at 806. It did so to avoid a perceived conflict between the equal monthly amount requirement in section 1325(a)(5)(B) and section 1326(b)(1)'s provision that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid ... any unpaid claim [for administrative expenses allowed

under section 503(b).]" 11 U.S.C. § 1326(b). While acknowledging the case law to the contrary, *DeSardi* held that section 1326(b) prohibited payment to any creditor, including secured creditors, until all allowed administrative expenses were paid in full. 340 B.R. at 808-09. It then concluded that while concurrent payment of attorneys' fees and adequate protection payments may be allowed because legitimate adequate protection payments would constitute an administrative expense entitled to similar priority as attorneys' fees, payments to a secured creditor exceeding the amount required for adequate protection before payment in full of attorneys' fees would violate section 1326(b). 340 B.R. at 799. Reasoning that it is "mathematically impossible" to require equal monthly payments throughout the term of the plan, including the period of adequate protection, the *DeSardi* court concluded that the "equal monthly amount" requirement in section 1325(a)(5) did not apply to adequate protection payments.[6] 340 B.R. at 809.

This court finds no such conflict between 1325(a)(5)(B)(iii) and section 1326(b). Section 1326(b) only requires payment of allowed administrative expenses "[b]efore *or at the time of* each payment to creditors under the plan." 11 U.S.C. § 1326(b) (emphasis added). Clearly, that section permits creditors to be paid concurrently with administrative expenses. Under *DeSardi's* interpretation, however, the phrase "or at the time of" is reduced to surplusage. Had Congress intended to require one class of claims to be paid in full prior to another it easily could have said so, structuring section 1326 like section 726 to specify the order of distribution. Nor does concurrent

---

[6] Unless the collateral happened to depreciate at a level such that the adequate protection payments would be equal and fully amortize the loan within the term of the plan. *Id.*

payment of administrative expenses violate priority rules as the Bankruptcy Code requires only that priority claims be paid in full over the course of a Chapter 13 plan. Section 1322(a)(2) only requires the plan "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim." 11 U.S.C. § 1322(a)(2).[7] Finally, section 1326(b) is not structured to fully implement the priority scheme of section 507, as it references only administrative expenses and trustee fees and not all priority claims. Administrative expenses and trustee fees by their nature accrue post-petition and are likely to continue accruing post-confirmation. Section 1326 requires that those charges not be subordinated or deferred pending payment of other claims as it clarifies that they can be paid over time and through the plan.

Periodic payments to a secured creditor under a Chapter 13 plan in an amount necessary to protect the creditor's interest in depreciating collateral are "periodic payments" as such term is used in section 1325(a)(5)(B)(iii)(I). Labeling them as "adequate protection" does not change that result, but rather invites the "elevat[ion] of form over substance . . . to sidestep statutory requirements." *In re Hamilton*, 401 B.R. 539, 543 (B.A.P. 1st Cir. 2009). *See also In re Ehiorobo*, No. 13-24713-SVK, 2015 WL 394363, at *3 (Bankr. E.D. Wis. Jan. 29, 2015), *aff'd sub nom. Ehiorobo v. Talmer Bank & Tr.*, No. 15-C-0169, 2015 WL 3936936 (E.D. Wis. June 26, 2015). Regardless

---

[7] *See, e.g., In re Romero*, 539 B.R. 557, 560 (Bankr. E.D. Wis. 2015); *In re Enders*, 2015 WL 5772199, at *3 (Bankr. E.D. Wis. Sept. 30, 2015); *In re Willis*, 460 B.R. 784 (Bankr. D. Kan. 2011); *In re Sanchez*, 384 B.R. 574 (Bankr. D. Ore. 2008).

of the label affixed to the "current contractual installment payments" and the "arrearage" to be made on Associated Bank's claim under the Debtor's plan, they, too, are periodic payments within the meaning of the statute. Section 1325(a)(5)(B)(iii) requires the total monthly payments on such claim – regardless of label and regardless of whether through the trustee or direct – to be in equal amounts unless the creditor consents to different treatment.

The second line of cases that permit the two-stage approach, the so-called *Erwin approach*", holds that section 1325(a)(5)(B)(iii) only requires equal monthly plan payments by the debtor to the trustee, and not mandate equal monthly payments to a creditor. *In re Erwin*, 376 B.R. 897, 902 (Bankr. C.D. Ill. 2007).[8] These cases construe the requirements of section 1325(a) to bind the debtor and creditors, but not the trustee whose obligations to make distributions are governed by section 1326(b). 376 B.R. at 902. Thus, they conclude that section 1325(a)(5)(B)(iii) only requires a debtor to propose equal payments to a trustee, and does not mandate equal payments by the trustee to a secured creditor. *Id.*

But this court finds *Erwin's* reading of subsection (5)(B)(iii) to be no less strained than the approach proposed by the *DeSardi* line of cases. As the court in *In re Williams*, we "can find no support for the holding ... that the term 'equal monthly amounts' in § 1325(a)(5)(B)(iii) references payments to the trustee, as opposed to a creditor." 583 B.R. 453, 457 (Bankr. N.D. Ill. 2018). *See also In re Romero*, 539 B.R.

---

[8] *See, e.g., In re Marks*, 394 B.R. 198 (Bankr. N.D. Ill. 2008); *In re Hernandez*, 2009 WL 1024621 (Bankr. N.D. Ill. Apr. 14, 2009); *In re Brennan*, 455 B.R. 237 (Bankr. M.D. Fla. 2009); *In re Amaya*, 2018 WL 1773096 (Bankr. S.D. Tex. Apr. 11, 2018).

557, 560 (Bankr. E.D. Wis. 2015); *In re Enders*, 2015 WL 5772199, at *3 (Bankr. E.D. Wis. Sept. 30, 2015); *In re Hamilton*, 401 B.R. 539 (1st Cir. B.A.P. 2009); *In re Kirk*, 465 B.R. 300 (Bankr. N.D. Ala. 2012); *In reF Willis*, 460 B.R. 784 (Bankr. D. Kan. 2011); *In re Espinosa*, 2008 WL 2954282, (Bankr. D. Utah Aug. 1, 2008); *In re Williams*, 385 B.R. 468 (Bankr. S.D. Ga. 2008); *In re Sanchez*, 384 B.R. 574 (Bankr. D. Ore. 2008).[9]

To the contrary, by its express terms section 1325(a)(5) applies "with respect to each allowed secured claim provided for by the plan." 11 U.S.C. § 1325(a)(5). The debtor's payments to the trustee in *Erwin* like the proposed payments to the trustee in this case include payments to be distributed to both secured and unsecured creditors. As such, the total payment made by the debtor to the trustee is not "with respect to" a secured creditor – the issue in section 1325(a)(5). Nor do the payments to the trustee in this case encompass all payments the plan contemplates for Associated Bank. Some of these are to be made directly by the Debtor to the creditor pursuant to section 1326(c). *See In re Aberegg*, 961 F.2d 1307, 1310 (7th Cir. 1992) ("bankruptcy court may approve a plan under which the debtor will act as disbursing agent with respect to certain payments, provided that the plan is confirmable under § 1325"). Further, by including the term "*such* payments," the language of subsection (B)(iii)(I) makes it clear that the payments which must be made "in equal monthly

---

[9] *See also In re Cochran*, 555 B.R. 892, 901 (Bankr. M.D. Ga. 2016) (finding *Erwin*'s discussion of the congressional intent with respect to section 1325(a)(5)(B)(iii) to "be the result of mere educated speculation" rather than "citations to formal legislative history"); *In re Bollinger*, 2011 WL 388275 (Bankr. D. Ore. Sept. 2, 2011) (noting that *Erwin* did "not provide any sources for [its] holdings regarding the purpose of the statute").

Page **11** of **20**

amounts" are payments of "property to be distributed pursuant to this subsection" with respect to an allowed secured claim, not the total amount of payments made by a debtor to the trustee. 11 U.S.C. § 1325(a)(5)(B)(iii)(I) (emphasis added). *See In re Williams*, 583 B.R. at 455; *In re Sanchez*, 384 B.R. at 578.

Nor can we agree with *Erwin's* suggestion that a trustee is not bound by or can disregard the terms of a confirmed plan. As the bankruptcy court noted in *In re Reid*, the case law "overwhelmingly holds that a confirmed plan binds the trustee." 480 B.R. 436, 445-46 (Bankr. D. Mass. 2012) (citing cases). *See also In re Evon*, 489 B.R. 88 (Bankr. N.D. Ill. 2013). Section 1327(a) does not list the trustee among those it names as bound by the confirmed plan. However, section 1326(c) states that the "trustee shall make payments to creditors *under the plan.*" 11 U.S.C. § 1326(c) (emphasis added). The disbursement under section 1326(c) is a "core service provided by a Chapter 13 trustee." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1838 (2015).

Subsection 1325(a)(5)(B)(iii)(I) provides that "if property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I). This language indicates that what must be paid in equal monthly amounts is the debtor's total periodic payment specifically to or on account of an allowed secured claim, whether paid directly or paid to the trustee in escrow for future distribution. By recognizing the statutory distinction between "payments" and "distribution" this interpretation does not rely on the legal fiction employed by *DeSardi* that monthly adequate protection payments (or current monthly installment payments) actually made or

distributed to a secured creditor are not "periodic payments" or property distributed on account of the secured creditor's claim. Nor does this interpretation risk the concerns raised in *Erwin* with respect to a trustee's procedures in implementing a confirmed plan, such as the precise timing or frequency of distributions. The statute says, "*if property to be distributed ... is in the form of* periodic payments, *such payments* shall be in equal monthly amounts" not that the *distributions* shall be in equal monthly amounts.[10] Furthermore, this court cannot agree with *Erwin* that section 1326(b) permits a trustee to make payments to administrative expense holders out of payments the plan provides to be made for the benefit of a secured creditor. As noted in *In re Williams*, "there is no basis in the statute for finding that § 1326(b)(1) trumps the right of an objecting secured creditor to equal payments under § 1325(a)(5)(B)." 583 B.R. at 457.

Chapter 13 proceedings can "benefit debtors and creditors alike" by allowing debtors to retain certain assets and allowing creditors to "usually collect more under a Chapter 13 plan than they would have received under a Chapter 7 liquidation."

---

[10] While the court bases this interpretation on the plain language of the statute, not policy concerns, we also note that an interpretation requiring actual *distributions* to secured creditors to be made in equal monthly amounts may present negative consequences for secured creditors, as well as prove to be administratively unworkable. While section 1326(a)(1)(C) permits certain adequate protection payments to be made directly to secured creditors, section 1326(a)(2) requires all other preconfirmation plan payments to the trustee to be retained by the trustee until confirmation and then distributed in accordance with the plan "as soon as is practicable" thereafter. 11 U.S.C. § 1326(a)(2). Generally, this results in a secured creditor receiving a lump distribution soon after confirmation of all the preconfirmation plan payments made to the trustee on its behalf. But, an interpretation requiring actual distributions to be equal would require the trustee to continue to hold a portion of the escrowed funds, allocating them across the repayment period in equal monthly amounts, thereby delaying repayment to the very secured creditor that the equal monthly amount provision is intended to protect. Such an interpretation would also seem to require adequate protection payments or current monthly installment payments to similarly be held in escrow with delayed payments in a manner apparently contrary to section 1326(a)(1)(C)'s provision for "adequate protection directly to a creditor" and section 1322(a)(5)'s "maintenance of payments while the case is pending."

*Harris v. Viegelahn*, 135 S. Ct. 1829, 1836 (2015). There can be little dispute that such benefits are more likely to be realized when able counsel guides the debtor through the complexities of the substantive and procedural requirements to formulate, propose and confirm a Chapter 13 plan. *See, e.g., In re Hennerman*, 351 B.R. 143, 151 (Bankr. D. Colo. 2006) (Pro se Chapter 13 debtors "seldom, if ever, successfully navigate through the statutory and procedural complexities associated with confirming a Chapter 13 plan."); *In re Love*, 2016 WL 768850 (Bankr. N.D. Ill. Feb. 25, 2016) ("Navigating a chapter 13 bankruptcy is difficult.").

The necessity and benefit of counsel for the efficient functioning of the system is recognized in section 330(a)(4)(B), providing for allowance as a claim against the estate of "reasonable compensation to [a Chapter 13 debtor's] attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor" and sections 503(b)(2), 507(a)(2) and 1326(b)(1) granting priority or certain favored treatment to such claim. But the Bankruptcy Code does not permit a debtor to force a secured creditor to accept without its consent unequal periodic payments merely to expedite payment to debtor's counsel.[11] The plain language of section 1325(a)(5)(B)(iii)(I) prevents expedited repayment of attorney's fees through a plan if the result is unequal periodic payment to a secured creditor without its consent. If

---

[11] For example, in *Lamie v. U.S. Trustee*, the Supreme Court held in the context of Chapter 7 that despite over 100 years' history in which "debtors' attorneys have been considered by Congress and the courts to be an integral part of the bankruptcy process" and despite some indication that deletion of Chapter 7 debtors' attorneys from a list of professionals entitled to assert a claim of administrative expense against the estate "was a scrivener's error," the Court followed "conventional doctrines of statutory interpretation [to] hold that § 330(a)(1) does not authorize compensation awards to [Chapter 7] debtors' attorneys from estate funds." 540 U.S. 526, 1032 (2004).

"Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent." *Lamie v. U.S. Trustee*, 540 U.S. 526, 1034 (2004). Like the bankruptcy court in in *in re Romero*, this court

> appreciates the policy reasons cited by the *Erwin* court and recognizes the quandary that debtors and their attorneys face when the equal payments requirement is interpreted to prohibit the long-standing practice in this District of paying the debtor's attorney's fees pro rata with secured creditors. But the statute permits no other interpretation. The equal monthly payments required by the Bankruptcy Code are not those made to the trustee, but rather to the creditor.

539 B.R. 557, 559 (Bankr. E.D. Wis. 2015).

Moreover, even less than in *Lamie*, today's ruling does not deprive the Debtor of all methods of repaying his attorney. It merely holds that the Debtor cannot expedite repayment to his attorney by forcing a two-tier repayment schedule on Associated Bank without its consent. The Debtor can either repay the attorney *pro rata* with Associated Bank or, if the Debtor desires to expedite repayment to his attorney, he can attempt to convince the secured creditor to accept a plan with unequal payments or restructure it to comply with section 1325(a)(5)(B)(iii).

B. Debtor's Arguments.

The Debtor argues in his response that section 1325(a)(5)(B)(iii)(I) "was meant to apply to depreciating assets, such as automobile loans, which is why the provision goes on to address adequate protection payments in 1325(a)(5)(B)(iii)(II)." (Resp., ECF No. 36, ¶4.)[12] It is true that most reported cases interpreting section

---

[12] Most of the Debtor's response consists of *ad hominum* attacks against Associated Bank's counsel, for what he contends to be mischaracterizations of the courts' General Order 17-02 and of the standing Chapter 13 trustee's ability to process payments to secured creditors where a plan does not state a specific monthly amount. The court is aware of the contents of General Order 17-02 and has already addressed the substantive arguments elsewhere in this ruling.

1325(a)(5)(B)(iii)(I) have involved vehicle loans. But contrary to the Debtor's argument, nothing in section 1325(a)(5)(B)(iii)(I) suggests that it applies only to depreciating assets or only to personal property. While subsection (B)(iii)(II) is limited to claims "secured by personal property," the two subsections are joined by the conjunctive "and," meaning that both are independent requirements which must be satisfied. *See, e.g. In re Williams*, 583 B.R. at 457 (noting that "subsections I and II of § 1325(a)(5)(B)(iii) are joined by 'and,' which indicates both provisions must be satisfied"). Nor is there any grammatical ambiguity that the specified requirements in subsection (b)(iii)(II) somehow apply to subsection (I). Indeed, reading the two provisions in the order that they were enacted further clarifies that the limitation "if the holder of the claim is secured by personal property" only applies to subsection (II).

We are not persuaded otherwise by the Debtor's reference to *obiter dicta* from *In re Cochran* that there "are good arguments that § 1325(a)(5)(B)(iii)(I) should be read in connection with § 1325(a)(5)(B)(iii)(II) to address pre-BAPCPA practices that harmed secured creditors with depreciating collateral." 55 B.R. 892, 904 n.14 (Bankr. M.D. Ga. 2016). A 'good argument' that Congress had one harm in mind when drafting a broad statutory provision does not mean that the provision does not cover other types of harm or permit a court to judicially craft limitations not present in the statute based on such conjecture.[13]

---

[13] *Cochran* took a unique and questionable approach on the issue of section 1325(a)(5)(B)(iii)(I), departing from the nearly universal line of cases which had held that the subsection prohibits balloon payments and instead held that a balloon payment by definition does not occur "repeatedly or regularly." 555 B.R. at 900 (citing Lynn M. LoPucki, *House Swaps: A Strategic Bankruptcy Solution to the Foreclosure Crisis*, 112 MICH. L. REV. 689, 729-33 (2014)). In other words, the court found that a large payment following a series of equal periodic payments is not itself a periodic payment required to be in an equal monthly amount. This court need not address that issue here, since the Debtor's

One decision has held that section 1325(a)(5)(B) does not apply to the cure of a mortgage arrearage pursuant to section 1322(b)(5). *In re Davis*, 343 B.R. 326 (Bankr. M.D. Fla. 2006). The Supreme Court had previously held that an earlier version of section 1325(a)(5)(B) applied to cure payments under section 1322(b)(5). *Rake v. Wade*, 508 U.S. 464, 472-75 (1993). At the time, section 1325(a)(5)(B) only required that the plan provide for the secured creditor to retain its lien and for "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [to be] not less than the allowed amount of such claim." 508 U.S. at 469.

At issue in *Rake* was whether the pre-1994 iteration of section 1325(a)(5)(B) required payment of interest on the arrearage, regardless of whether the secured creditor was entitled to interest under non-bankruptcy law, and the Supreme Court held that the creditor was so entitled. 508 U.S. at 475. Arrearages often include interest and late fees, and the result of *Rake* was to give "secured creditors interest on interest payments, and interest on the late charges and other fees, even where applicable law prohibits such interest and even when it was something that was not contemplated by either party in the original transaction." H.R. Rep. 103–834, 103rd Cong., 2d Sess. 55 (October 4, 1994). Concerned about "a windfall to secured creditors

---

proposed plan does not include a balloon payment, but notes that such a narrow interpretation of the term "periodic payment" has not been adopted by any other court and is so narrow as to deprive the statutory provision of almost any practical meaning or effect. To the extent that the interpretation of "periodic payments" or "such payments" in *Cochran* is so narrow as to treat the current monthly installment payments and arrearage payments as separate sets of equal monthly payments and permitted by the statute, the court disagrees for the reasons stated earlier. But even under such interpretation, the Debtor's proposed plan would fail because the arrearage payment in the 'stub month' in which the attorneys' fees are paid differs from the other monthly payments of the arrearage.

at the expense of unsecured creditors", Congress amended section 1322 to add subsection (e) with "the effect of over ruling the decision of the Supreme Court in *Rake v. Wade.*" *Id.* This amendment provides that "[n]otwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e).

*In re Davis* held that the enactment of section 1322(e) overruled not only *Rake*'s ruling on interest on arrearages, but its broader ruling that section 1325(a)(5) does not apply to claims cured and maintained under section 1322(b)(5). It concluded that "equal monthly payments are not required as the claim at issue is one in which arrears on long term debt are being cured." 343 B.R. at 328. Other courts have disagreed, noting that section 1322(e) only addressed the amount necessary for cure, not the applicability of section 1325(a)(5)(B). *See, e.g., In re Hamilton*, 401 B.R. 539 (1st Cir. B.A.P. 2009); *In re Spark*, 509 B.R. 728 (Bankr. M.D. Fla. 2014); *In re Schultz*, 363 B.R. 902, 905-06 (Bankr. E.D. Wisc. 2007); *In re McDonald*, 397 B.R. 175, 177 (Bankr. D. Me. 2007). This court agrees with *Hamilton* and other courts that section 1322(b)(5) is not "at odds" with section 1325(a)(5)(B)(iii)(I) and that nothing in section 1322(b)(5), 1322(e) or 1325(a)(5)(B) indicates that section 1325(a)(5)(B) does not apply to the cure and maintenance of a secured claim through a plan other than on the issue of the amount necessary for cure. 401 B.R. at 545.

C.   **Associated Bank's Additional Arguments**

Having found that Associated Bank has demonstrated that the proposed plan fails to satisfy section 1325(a)(5)(B)(iii)(I) as to its claim, the court will briefly address two additional objections that the Bank raised in its brief in support of its objection.

First, Associated Bank argues that the proposed plan is unclear and ambiguous in stating both that it will be paid "$0 per month" on the arrearage and that total payments by trustee on the arrearage will be $23,943.42. Although the Debtor clarified in his response to the objection his intent to pay the arrearage *pro rata* from monthly trustee payments after payment of attorney's fees, the court agrees that the plan is confusing and ambiguous when it indicates both that the trustee will pay over twenty-three thousand toward the arrearage and that the Debtor's monthly payments will be $0. The model plan provides for listing monthly payments in a set amount in section 3.1. If a debtor seeks to propose another form of payment, he should provide for that in his list of non-standard provisions found in section 8 of the form.

Second, Associated Bank contends that delaying the arrearage payments until after the attorney's fees are paid is not a cure "within a reasonable time" required by section 1322(b)(5). Because the court finds that the proposed repayment scheme violates section 1325(a)(5)(B)(iii)(I), we need not determine whether it would have been "reasonable" absent the equal monthly payment requirement.

Finally, Associated Bank "question[s] whether the Debtor received proper disclosure of how his attorney's compensation would be paid" noting that the plan

provides for payment to the Debtor's attorney ahead of the mortgage arrears (Associated Bank's brief, ECF No. 35, at *6.) This concern appears to be based on nothing more than speculation and irrelevant to the Bank's objection to confirmation.[14]

Accordingly, Associated Bank's objection to confirmation of the Amended Plan will be sustained and confirmation denied. The Debtor will be given until August 9, 2018 to file an amended plan consistent with the court's rulings. A separate order shall be entered giving effect to the determinations reached herein.

DATE: July 9, 2018

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge

---

[14] To the extent that Associated Bank seeks an examination of the Debtor's transactions with his attorney, he has not made a request in accordance with Bankruptcy Rule 2017. Nor is it clear that it would have standing to do so. While Rule 2017(a) permits "any party in interest" or the court *sua sponte* to move to question a prepetition payment to an attorney, Rule 2017(b) permits only the debtor, the United States trustee or the court *sua sponte* to question a postpetition payment "or any agreement therefor" to an attorney.